UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Robert Joseph Van Dyke, III,                    Case No.: 10-55210
                                                Chapter 7
    Debtor.                                 Hon. Mark A. Randon
_____/

Christopher R. Wyse,

    Plaintiff,

v.                                              Adversary Proceeding
                                                Case No.: 17-04848

Robert Joseph Van Dyke, III,

    Defendant.
_____/

# OPINION AND ORDER DENYING
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

In 2004, Christopher Wyse, Robert Van Dyke, III, and Christopher Hoffman formed what turned out to be a failed real estate investment company, CBC Development, LLC.[1] Van Dyke served as CBC's financial manager. Unbeknownst to Wyse, around the time CBC became defunct, Van Dyke filed individual Chapter 7 bankruptcy and received a discharge on December 1, 2010.

Seven years later, Wyse filed this adversary proceeding alleging that Van Dyke

---

[1] Hoffman died in 2015.

1

owes him a nondischargeable debt under sections 523(a)(2), (4), and (6) of the Bankruptcy Code. The debt arises from Van Dyke's alleged violations of Michigan's Limited Liability Company Act ("MLLCA") as the manager and a fiduciary of CBC. Van Dyke moves to dismiss the case for two reasons: (1) Wyse's ability to establish the debt is barred by MLLCA's statute of limitations; and (2) the adversary proceeding, itself, is untimely under Bankruptcy Rule 4007(c).

Wyse and Van Dyke testified at an evidentiary hearing, and the Court admitted 11 exhibits. Because: (1) the limitations period for establishing a debt under the MLLCA may be tolled for fraudulent concealment; (2) Wyse's Complaint sufficiently alleges fraudulent concealment; and (3) Wyse's adversary proceeding is not subject to the time constraints of Rule 4007(c), Van Dyke's motion is **DENIED**.

## II. BACKGROUND

### A. *The Members' Roles in CBC and Purchase of the Merrimac Property*

When CBC was formed, the three members intended to make a profit buying and either selling or renting properties in Pontiac, Michigan. Van Dyke was the resident agent, sole financial manager, and managing member. Hoffman was tasked with finding the properties that Wyse–a licensed builder–would, in turn, renovate. Once renovations were complete, Hoffman would use his real estate expertise to either sell or rent the properties. Things didn't go as planned.

The only viable property that CBC acquired was 4-unit rental, located at 98 S. Merrimac St. ("the Merrimac Property"). Although the Merrimac Property was

purchased with CBC funds, Van Dyke had the title placed in his name. Wyse renovated the Merrimac Property, tenants resided there for a period of time, and CBC received some rent money.

> **B.    The Loans from Van Dyke's Stepmother and the Oakland County Circuit Court Lawsuit**

The source of CBC's funds, including those used to purchase the Merrimac Property, was Van Dyke's stepmother, Lorna Brown. Brown extended CBC and its three members a credit line of up to $125,00.00 at 10% interest. Each member co-signed the commercial note, and Hoffman pledged two of his own properties as collateral. Sadly, Brown passed away before the money she loaned CBC was fully repaid. At the time of her death, Brown had loaned $69,500.00 of the credit line, but had only received sporadic payments totaling $6,730.35.

In 2016, Brown's daughters filed a lawsuit in the Oakland County Circuit Court against CBC and its members, jointly and severally, for breach of contract, unjust enrichment, and promissory estoppel. Wyse agreed to a Consent Judgment in the amount of $48,500.00 and sold one of his rental properties to satisfy the judgment.

> **C.    Van Dyke's Bankruptcy Filing**

Van Dyke had filed Chapter 7 bankruptcy, years earlier, on May 6, 2010. He did not list Wyse as a creditor on his schedules or creditor matrix. During the pendency of the bankruptcy, however, Van Dyke and Wyse were next-door neighbors. Van Dyke testified that he personally informed Wyse of the bankruptcy in their shared yard, and his

3

previous bankruptcy attorney sent Wyse a letter confirming the filing. Wyse disagrees: he testified that there was no discussion regarding the bankruptcy filing in the yard; they only discussed Van Dyke's intent to use the Merrimac Property as a drug recovery home. Wyse says that Van Dyke finally told him years later (in the summer of 2016, during the lawsuit by Brown's heirs) that he had filed bankruptcy.

As the Court stated on the record, it does not find Van Dyke's testimony on this issue credible: had Van Dyke's bankruptcy counsel known Wyse was a creditor in 2010, he would have had no reason not to include him on the schedules and creditor matrix. And Van Dyke could not provide any details about the alleged conversation in the shared yard, including when it occurred and what was said.

The Court finds that Wyse did not receive notice of the bankruptcy filing until sometime between the summer of 2016 and October 16, 2016, when his attorney acknowledges she obtained a copy of Van Dyke's petition through the Public Access to Court Electronic Records Service (PACER).[2]

### D. *Wyse's Adversary Proceeding*

Wyse filed this adversary proceeding on December 14, 2017. He alleges Van Dyke did the following without his knowledge or consent: converted CBC funds to his personal use, obtained title to the Merrimac Property, converted rent money from the Merrimac Property to his personal use (and misrepresented the amount of rent money he

---

[2]Wyse's attorney in this adversary proceeding also represented him in the Brown lawsuit.

received on his bankruptcy schedules), embezzled an insurance check from a fire that occurred at the Merrimac Property, failed to pay property taxes on the Merrimac Property and the two properties that were pledged as collateral for the Brown loans, stopped making payments on the Brown loans, filed a fraudulent partnership tax form in 2008, and failed to file the partnership tax form in other tax years. Wyse seeks a $423,152.19 nondischargeable judgment, which includes treble damages of $332,885.64 for embezzlement and conversion and $90,266.55 for willful, malicious, and wanton breaches of fiduciary duty

## III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga Cnty. Dep't of Children Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The Court must draw all reasonable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). However, the

5

nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

## IV. ANALYSIS

There are two distinct issues in this nondischargeability proceeding. First, Wyse must show he can establish the debt, meaning he filed the complaint within the time period allowed under the MLLCA. *See Siragusa v. Collazo (In re Collazo)*, 817 F.3d 1047, 1051 (7th Cir. 2016).

If Wyse can clear this hurdle, the Court turns to the dischargeability issue. "[T]he question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law." *Id.*

### A. *Wyse's Adversary Proceeding is Timely Under Michigan's Limited Liability Company Act*

Wyse alleges the debt arises under the MLLCA. MICH. COMP. LAWS § 450.4515(1). However, the time period for bringing such action is not unlimited. "An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued or within 2 years after [Wyse] discovers or reasonably should have discovered the cause of action under this section, whichever occurs first." MICH. COMP. LAWS § 450.4515(1)(e). These are "alternative statues of

6

limitations, one based on the time of discovery of the cause of action and the other based on the time of accrual of the cause of action." *Frank v. Linkner*, 894 N.W.2d 574, 577 (Mich. 2017).

Section 600.5827 defines when a cause of action generally "accrues" for purposes of the three-year statute of limitations period: "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." The Court must determine the date on which Wyse first incurred the alleged harms. *Linkner*, 894 N.W.2d at 584. "The relevant 'harms' for that purpose are the actionable harms alleged in a plaintiff's cause of action." *Id.* at 584. Under the MLLCA, a court may grant relief to a member of a limited liability company, if the member can show that "acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member[.]" MICH. COMP. LAWS § 450.4515(1). "'[W]illfully unfair and oppressive conduct' means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member." MICH. COMP. LAWS § 450.4515(2).

Wyse's Complaint alleges that "[w]ithin the month after receiving the loan proceeds, Defendant Van Dyke III began his seven (7) year heinous scheme of misrepresentations, fraud, fraudulent concealment, defalcation, breach of fiduciary duties, embezzlement, conversion, and larceny all of which were intentional, willful, wanton and malicious misconduct." According to the Complaint, the loan proceeds were received in

June 2005; therefore, the alleged substantial interference with Wyse's interest as a member occurred in 2005. The three-year statute of limitations expired in 2008.

This limitations period may be tolled, however, under the fraudulent concealment statute:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim . . . the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered the existence of the claim. . . although the action would otherwise be barred by the period of limitations.

MICH. COMP. LAWS § 600.5855. "The plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment. The plaintiff must prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery. Mere silence is insufficient." *Sills v. Oakland Gen. Hosp.*, 220 Mich. App. 303, 310 (1996) (internal citation omitted).

Wyse's Complaint alleges the following:

1. Van Dyke refused to give an accounting in order to conceal his fraudulent conduct and failed to appear for his deposition in the state-court proceeding about CBC's accountings.

2. Van Dyke listed CBC as a co-debtor on his bankruptcy petition using his own address so that all CBC notices went to him, further concealing his fraudulent conduct from Wyse.

3. Van Dyke's concealment of the bankruptcy also concealed the causes of action and precluded Wyse's ability to act, thus prejudicing Wyse and resulting in delay.

4. Van Dyke orally misrepresented that the CBC funds were safe.

5. Van Dyke represented to Wyse in 2007 that he was making payments on

>   the Brown loans, but he never made a single payment in the correct minimum amount and eventually stopped making payments altogether.
>
> 6. Van Dyke directed the owner of Monday's Accounting Service to destroy all documents in her possession regarding himself and CBC.
>
> 7. Van Dyke misrepresented to Wyse that the Merrimac Property was owned by CBC, when it was actually titled in Van Dyke's name.

Wyse alleges sufficient facts to trigger the fraudulent concealment statute. As such, if proved, the cause of action is not barred by the three-year statute of limitations. Instead, Wyse had two years from the date he discovered–or should have discovered–that a cause of action existed, to file an adversary proceeding.

Because Wyse has sufficiently alleged that the complaint is timely under the MLLCA, the Court address the second issue.

### B. *The Bankruptcy Rules Allow Wyse to File his Adversary Proceeding at Any Time*

Debts covered under sections 523(a)(2), (4) and (6) are not automatically excluded from discharge. Instead, these debts are discharged unless a creditor timely files an adversary proceeding to determine dischargeability. Federal Rule of Bankruptcy Procedure 4007(c) provides that a complaint to determine the dischargeability of a debt under sections 523(a)(2), (4), or (6) must be filed no later than 60 days after the first date set for the 341 Meeting of Creditors. It further provides that "[o]n motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired." In addition, Federal Rule of Bankruptcy Procedure 9006(b)(3) provides that "[t]he court may enlarge the time

9

for taking action under . . . 4007(c) . . . only to the extent and under the conditions stated in th[e] rule[]." As such, Wyse would have either had to file his complaint–or a motion to extend the time to file a complaint–on or before August 30, 2010, 60 days after the date set for the meeting of creditors. But this would have been impossible. He did not have knowledge of the bankruptcy until 2016.

Section 523(a)(3)(B) provides another exclusion from discharge: where–like in this case–the debt is not listed or scheduled "in time to permit . . . timely filing of a proof of claim and timely request for a determination of dischargeability of such debt . . . unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]" And 523(a)(3) unscheduled debts are not subject to Rule 4007(c)'s 60-day time period.

The upshot is this: "The penalty to the debtor for failing to schedule a fraud debt or otherwise to inform the creditor of the bankruptcy is . . . loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions." *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 924 (Bankr. E.D. Cal. 1995) (citing Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under 11 U.S.C. § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts*, 69 Am. Bankr. L.J. 33, 44 (1995)); *see also Everly v. 4745 Second Ave., Ltd. (In re Everly)*, 346 B.R. 791, 796 (B.A.P. 8th Cir. 2006) (same). Therefore, Wyse's nondischargeability action falls within Bankruptcy Rule 4007(b)–not 4007(c)–and may be filed "at any time." *See In re Franklin*, 179 B.R. at 924.

## V. CONCLUSION

Because: (1) the limitations period for establishing a debt under the MLLCA may be tolled for fraudulent concealment; (2) Wyse's Complaint sufficiently alleges fraudulent concealment; and (3) Wyse's adversary proceeding is not subject to the time constraints of Rule 4007(c), Van Dyke's motion is **DENIED**.

Van Dyke must file an answer to Wyse's Complaint on or before *June 22, 2018*.

**Signed on June 01, 2018**

/s/ Mark A. Randon
Mark A. Randon
**United States Bankruptcy Judge**